**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 13-271(RBW) |
| | : | |
| ANIRUDDHA SHERBOW | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION**

The United States of America hereby requests that defendant, Anirudda Sherbow, be detained pending trial in this matter. The government's request is based on two grounds: (1) the defendant is charged with a crime of violence (18 U.S.C. § 3142 (f)(1)(A)) and (2) the defendant presents a serious risk of flight (18 U.S.C. § 3142 (f)(2)(A)). The defendant has been charged by indictment with threatening to kill United States Representative Tulsi Gabbard, in violation of 18 U.S.C. § 875(c).

**I.     Procedural Posture.**

On August 14, 2013, Magistrate Judge Alan Kay signed a criminal complaint that charged the defendant, Aniruddha Sherbow, with one count of transmission of threats in interstate commerce in violation of 18 U.S.C. § 875(c). The underlying affidavit detailed Sherbow's conduct, which included the following: (1) leaving a voicemail message for Rep. Gabbard on August 1, 2013, stating, "I'm gonna fucking kill you"; and (2) sending an e-mail on August 3, 2013, stating, "I, Aniruddha Sherbow, with the Divine as my witness, do hereby solemnly vow to find Tulsi Gabbard, wheresoever she may be, and to sever her head from her body."

On August 28, 2013, Sherbow was arrested in Tijuana, Mexico. He was, thereafter, deported to the United States. He made his initial appearance in the United States District Court for the Southern District of California on August 30, 2013. On September 12, 2013, we understand that a detention and preliminary hearings were held in the Southern District of California and that the magistrate judge ordered that the defendant be detained[1] and found probable cause for the pending charge. Subsequently, the grand jury returned an indictment charging defendant with threats in violation of 18 U.S.C. § 875(c).

**II.    Facts.**

Tulsi Gabbard represents Hawaii's Second Congressional District. Before being elected to Congress in 2012, Rep. Gabbard served on the Honolulu City Council for two years.

In February 2011, Sherbow began harassing Rep. Gabbard. He sent her a series of rude and inappropriate text messages and left similar voicemail messages. In response, Rep. Gabbard sought to enjoin Sherbow from contacting her. On March 24, 2011, the District Court for the First Circuit of Hawaii granted Rep. Gabbard's petition. Among other things, the court ordered Sherbow to refrain from "[c]ontacting, threatening or harassing [Rep. Gabbard]." Injunction Against Harassment, Civil No. ISS11-1-00217, Mar. 24, 2011, at 2. (The injunction remains in effect until March 24, 2014. *Id.*)

Unfortunately, Sherbow did not comply with the court's order. Not only did Sherbow continue to contact Rep. Gabbard, his communications became more sinister and threatening. For example, on August 1, 2013, Sherbow left a voicemail message on Rep. Gabbard's

---

[1] We understand that our counterparts in the Southern District of California are submitting a proposed order of detention and findings of fact. We will submit the executed order to the Court as soon as we receive it. As a precaution, we are reiterating our request for pretrial detention in this Court.

telephone. He stated, in part, "So let me make something very fucking clear to you, you stupid little bitch, what's gonna happen is that I'm gonna find you, I'm gonna mash your fucking face into a fucking pulp, and then I'm gonna fucking kill you." Being familiar with Sherbow's voice from previous interactions, Rep. Gabbard identified his voice in the voicemail. Additionally, on August 5, 2013, the voicemail was played for Sherbow's mother. Ms. Sherbow stated that the caller "sounded like Rudy," which is how she refers to Sherbow.

Just two days later, on August 3, 2013, Sherbow, identifying himself by name, sent an e-mail to multiple media outlets, the FBI, and others. The subject of the e-mail was "Cutting Off Tulsi Gabbard's Head." The body of the e-mail included the following:

> In the first vow to kill Tulsi, it was only if she came back to the mainland US. She was cool in Hawaii, or anywhere else in the world. After my two-and-half-year pounding, however, I think I am ready to tighten that vow up, so that it includes everywhere. Resistance is futile. So here it is:
>
> "*I, Aniruddha Sherbow, with the Divine as my witness, do hereby solemnly vow to find Tulsi Gabbard, wheresoever she may be, and to sever her head from her body*."

Sherbow's August 3, 2013 e-mail (emphasis added).

Rep. Gabbard went abroad shortly after Sherbow uttered these threats. Upon her return on August 9, 2013, the United States Capitol Police deployed an eighteen-person security detail to provide around-the-clock security for Rep. Gabbard. They maintained this security detail until Sherbow's arrest in Mexico on August 28, 2013.

### III. The defendant should be detained pending trial, as he presents both a danger and a risk of flight.

A defendant must be detained pending trial, if the Court determines that no condition or combination of conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community . . . ." 18 U.S.C. § 3142(e). A finding of

either risk of flight or danger is sufficient for detenition.  *See, e.g., United States v. Ferranti*, 66 F.3d 540, 543-44 (2nd Cir. 1995).  The former must be proved by a preponderance of the evidence, *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996), and the latter by clear and convincing evidence.  18 U.S.C. § 3142(f)(2)(B).

In assessing the risk of flight and danger presented by the defendant, the Court should consider the following factors:  (1) nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and serious of the danger posed by the defendant to any person or the community.  18 U.S.C. § 3142 (g).  As set forth more fully below, each of these factors militates in favor of detaining the defendant.

**A.    Sherbow poses a danger.**

Plainly, Sherbow presents a danger to Rep. Gabbard.[2]  He has been harassing her, in violation of a court order, for over two years.  This harassment culminated with Sherbow threatening to decapitate Rep. Gabbard.  The danger to Rep. Gabbard presented by Sherbow is demonstrated by the Capitol Police's response to his threats.  While Sherbow was at large, the Capitol Police provided Rep. Gabbard with around-the-clock protection.

Furthermore, the case against Sherbow is extremely strong:  (1) his threats are explicit and graphic, (2) based on prior contact with Sherbow, Rep. Gabbard was able to identify Sherbow's voice in his August 1 voicemail thereat and her identification was corroborated by Sherbow's mother, and (3) Sherbow identified himself by name in his August 3 e-mail threat.  Sherbow's lack of a record of violence does not negate a finding of dangerousness.  *See United*

---

[2]    Threats in violation of 18 U.S.C. § 875(c) constitute a crime of violence (18 U.S.C. § 3142(f)(1)(A). *United States v. Choudhry*, 2013 WL 1785392, *3 (E.D.N.Y. Apr. 26, 2013) ("Therefore, communicating a threat in violation of 18 U.S.C. § 875(c) constitutes a 'crime of violence,' warranting detention under the Bail Reform Act.")

*States v. LaFontaine*, 210 F.3d 125, 134 (2nd Cir. 2000) (government not required to show record of violence or dangerousness to support pretrial detention).

**B.     Sherbow presents a risk of flight.**

Moreover, Sherbow presents a risk of flight.  First, he has no ties to this community and was arrested abroad.  *See, e.g., United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990) (preponderance of evidence showed risk of flight where defendant lacked substantial ties to community, had foreign contacts, and uneven employment history).  Second, according to police documents prepared in relation to Rep. Gabbard's petition for an injunction, Sherbow had neither a fixed address nor regular employment in Hawaii.[3]  Third, and perhaps most telling, during the injunction litigation in Hawaii, Sherbow failed to appear for one court appearance and left another without permission.  *See, e.g., United States v. Quartermaine*, 913 F.2d 910, 916-17 (11th Cir. 1990) (finding of risk of flight based on, among other things, defendant's failure to appear at proceedings in unrelated cases).  Sherbow's demonstrated lack of respect for the court's authority establishes that he presents a risk of flight because the Court could not be confident that Sherbow would abide by any conditions of release that might be imposed.

---

[3]     The Pretrial Services Report lists the defendant's address as 7 Dogwood Lane, New Paltz, New York, 12561.  On August 5, 2013, defendant's mother was interviewed at that address, and she stated that the defendant had never lived there and that she believed he was in Mexico.

**V.     Conclusion**

For the foregoing reasons, the Court should order that he be detained pending trial.

                                            Respectfully submitted,

                                            RONALD C. MACHEN JR.
                                            United States Attorney

                                            _____/s/_____
                                            John Crabb Jr.
                                            Assistant United States Attorney
                                            N.Y. Bar No. 2367670
                                            National Security Section
                                            555 4th Street, N.W.
                                            Washington, D.C.  20530
                                            (202)252-1348
                                            john.d.crabb@usdoj.gov